

**FILED**
March 17, 2026 10:12 AM
ST-2016-CV-00410
**TAMARA CHARLES**
**CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
***

| | |
|---|---|
| **DR. TYLUR ARVIDSON and DR. TYGUE ARVIDSON, individually and derivatively on behalf of VI CHIROPRACTIC, LLC,** | ) CASE NO. ST-2016-CV-00410 <br> ) <br> ) ACTION FOR BREAH OF FIDUCIARY <br> ) DUTY, ACTION TO DETERMINE <br> ) DISTRIBUTIONAL INTEREST AND <br> ) ENFORCE PURCHASE OF INTEREST <br> ) AND DERIVATIVE ACTION |
| Plaintiffs, | ) |
| vs. | ) <br> ) |
| **DR. WILLIAM L. BUCHAR and VI CHIROPRACTIC, LLC,** | ) <br> ) COUNTERCLAIM IN <br> ) CONTRACT AND TORT |
| Defendants. | ) |
| **VI CHIROPRACTIC, LLC,** | ) <br> ) |
| Third-Party Plaintiff, | ) ACTION IN CONTRACT <br> ) AND TORT, JOINDER REQUEST |
| vs. | ) <br> ) |
| **DR. TYLUR ARVIDSON and DR. TYGUE ARVIDSON,** | ) <br> ) <br> ) |
| Third-Party Defendants. | ) |

Cite as 2026 VI Super 8U

### MEMORANDUM OPINION AND ORDER

¶1     **THIS MATTER** is before the Court on

1.     Plaintiffs' Motion to Compel ("Motion"), filed October 29, 2019;

2.     Attorney Rosh Alger's Response to Motion to Compel ("Response"), filed November 25, 2019; and

3.     Plaintiffs' Reply to Attorney Alger's Response to Motion to Compel, filed December 16, 2019.

¶2     The Court will grant Plaintiffs' Motion in part after identifying which documents in Defendant's Privilege Log are discoverable. Consistent with the Court's previous March 20, 2019, Order, the Court will compel Attorney Rosh Alger ("Alger") to produce documents created on or before July 12, 2016, related to his representation of VI Chiropractic.

## I.     FACTS AND PROCEDURAL HISTORY.

¶3     On July 12, 2016, Plaintiffs Dr. Tylur Arvidson and Dr. Tygue Arvidson (the "Arvidsons") sued Dr. William L. Buchar ("Buchar") alleging a single count of breach of fiduciary duty. Principally, the Arvidsons allege that Buchar unilaterally dissolved a medical business both Buchar and the Arvidsons had been engaged in order to avoid paying the Arvidsons for their interest in the company.[1] On October 4, 2016, Buchar filed Defendant's Answer, Affirmative Defenses, Counterclaims, Action For Contribution And VI Chiropractic LLC's Complaint Against Plaintiffs [sic] And Request To Join The Action ("Answer"), which added VI Chiropractic, LLC ("VI Chiropractic" or "the LLC") as a party and asserted several counterclaims against the Arvidsons: 1) Necessary Joinder; 2) Breach of Contract; 3) Breach of Implied Covenant of Good Faith and Fair Dealing; 4) Tortious Interference with Contractual Relations; 5) Defamation (Libel); 6) Collusion; 7) Unjust Enrichment; 8) Fraud; 9) Contribution; and 10) Action for Injunction.[2] By Order issued on March 5, 2018, the Arvidsons were granted leave to file their First Amended Verified Complaint which alleged the following causes of action:  1) Breach of Fiduciary Obligations; 2) Action to Determine Distributional Interest and Enforce Purchase; and 3) Derivative Action for Breach of Duties of Loyalty and Care.[3] Buchar and VI Chiropractic filed Defendants' Answer and Affirmative Defenses To Plaintiff's First Amended Complaint on April 3, 2018.[4]

¶4     To discover the circumstances surrounding payments made to Alger by VI Chiropractic and his representation of the company, the Arvidsons served a Subpoena Duces Tecum on Alger on January 11, 2019.[5] The Subpoena initially requested "copies of all documents, including communications, relating to VI Chiropractic, LLC," and "copies of all checks received from VI Chiropractic LLC or other documents referencing or related to any payment received from VI Chiropractic, LLC."[6] Alger and Buchar filed separate motions to quash the Arvidsons' Subpoena citing among other concerns, that the Arvidsons impermissibly sought disclosure of privileged and protected attorney-client information.[7] In an Order dated March 20, 2019, the Court denied Alger and Buchar's motions to quash.[8] On October 29, 2019, the Arvidsons filed the current Motion To Compel, stating they have not received all the documents requested by their Subpoena.[9]

## II.     ARGUMENT.

¶5     The Arvidsons assert that the subpoenaed documents "cannot be withheld on the basis of a claimed attorney client privilege or claimed work-product doctrine because [the Arvidsons] were

---

[1] Pls.' First Amend. Ver. Compl. at 3-4.

[2] Def.'s Answer.

[3] Pls.' First Amend. Ver. Compl.

[4] Defs.' Answer To First Amend. Ver. Compl.

[5] Pl.'s Subpoena.

[6] *Id.* Ex. A.

[7] Def.'s Mot. To Quash Subpoena; Alger's Mot. To Quash Subpoena.

[8] Order Denying Mot. To Quash (Mar. 20, 2019).

[9] Pl.'s Mot. To Compel.

members of the client LLC, VI Chiropractic, LLC." The Arvidsons also argue that the withheld documents were created to document legal work performed on behalf of VI Chiropractic and outline VI Chiropractic's operations. As such, the Arvidsons state that work-product protections do not apply to the documents as they were not prepared in anticipation of litigation.

¶6    In his Response, Alger notes that he "served as counsel to the parties to this litigation in two different capacities," acting as counsel for VI Chiropractic before May 2016 when Alger's representation of Buchar in his personal capacity began. Alger's initial motion to quash confirms he then undertook joint representation of VI Chiropractic and Buchar.[10] Alger's Response also indicates that he withheld any documents produced on or after he was retained as counsel for Buchar in a personal capacity, arguing they contain privileged attorney-client communications and confidential work-product. Though he does not specify when exactly he was retained, Alger identifies May 2016 as the general time frame.

¶7    Alger further argues that the Arvidsons are not entitled to information involving his representation of VI Chiropractic after filing the present lawsuit. Alger asserts that by seeking to recover copies of all time records on behalf of or paid for by VI Chiropractic, the Arvidsons are requesting privileged communications between Buchar and his counsel. Alger also contends that Article 14 of VI Chiropractic's Operating Agreement, outlining "Rights and Duties of Members," does not give the Arvidsons rights to access litigation records and correspondence. Alger cites Article 15, providing "Powers, Rights and Duties of the Manager," to argue "Dr. Buchar clearly has the exclusive authority to obtain legal services on behalf of the company and to determine what records he will and will not release." Alger contends that he has provided all documents responsive to the Arvidson's Subpoena produced before he began representing Buchar. For all materials he believes could not be disclosed after this representation began, Alger submitted a privilege log under V.I. R. CIV. P. 45(e)(2).

¶8    The Arvidsons' Reply argues that Alger fails to comply with *Browne v. Virgin Islands,*[11] holding that the party asserting attorney-client privilege bears the burden of demonstrating the privilege is applicable. The Arvidsons note "One of the principal issues in this case is whether the Operating Agreement governing VI Chiropractic was amended to increase the Arvidsons' ownership interest in the company." Thus, a document entitled "Draft Operating Agreement w[ith] Comments"[12] is of particular interest to them. The Arvidsons plan to use the draft agreement to prove they individually held a 20% distributional share (40% combined share) in VI Chiropractic as of June 1, 2016, when Buchar gave the Arvidsons a notice of dissolution.[13] This argument conflicts with Buchar's assertions that the Arvidsons each held a 1% interest in the company.

---

[10] Alger's Mot. To Quash Subpoena ("Alger represented defendant Dr. William L Buchar and third-party plaintiff VI Chiropractic, LLC in the above captioned matter from approximately May 2015 to March 2018.")

[11] *Browne v. Virgin Islands*, 56 V.I. 207 (V.I. 2012).

[12] Pl.'s Reply To Attorney Alger's Response to Mot. to Compel. Ex. A.

[13] Pl.'s Mot. To Compel ("The draft operating agreement and draft consulting services agreement are especially relevant as the parties dispute the import of those documents, namely, the amount of Plaintiffs' interest in the company.")

¶9      The Arvidsons also draw on *Fenster v. Dechabert*[14] to assert the work-product doctrine applies where a document was prepared at a time when litigation was reasonably predictable. The Arvidsons argue that the Operating Agreement's plain terms and the Virgin Islands Uniform Limited Liability Company Act ("LLC Act") both provide that the document was prepared to govern the operations of the LLC rather than to prepare for litigation.[15]

¶10     The Arvidsons add that VI Chiropractic was Alger's client, and as former members of the company, the attorney-client privilege is not applicable because the LLC and the Arvidsons were inextricable.

¶11     Finally, the Arvidsons claim that because they were members of VI Chiropractic until the filing of the Complaint on July 12, 2016, Alger lacks authority to withhold documents and communications dated May 1, 2016, or later, relating to his representation of VI Chiropractic. Noting that "Attorney Alger's Response indicates that Attorney Alger unilaterally imposed a cut-off date of April 30, 2016, on the discovery produced . . . ."[16] the Arvidsons assert that because the Court denied Alger and Buchar's motions to quash based on previously claimed privilege, Alger cannot impose a timeframe on the subpoenaed documents he will provide.

## III.    LEGAL STANDARD.

¶12     Under Virgin Islands Rule of Civil Procedure 26(b), a party may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and information does not need to be admissible as evidence to be discoverable.[17] Virgin Islands Rule of Evidence 401 defines relevant evidence as evidence tending to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.[18]

¶13     Under Virgin Islands Rule of Civil Procedure 34, within the scope of Rule 26(b), a party may serve on any other party a request to produce (and allow the requesting party to inspect, copy, test, or sample) any designated documents or electronically stored information within its possession or any designated tangible things.[19] The request must describe with reasonable particularity each item or category of items to be inspected and specify a reasonable time, place, and manner for the inspection and for performing the related acts.[20]

¶14     Virgin Islands Rules of Civil Procedure 45 prescribes the duties of non-parties in

---

[14] *Fenster v. Dechabert*, No. SX-16-CV-343, 2017 WL 4969896, at *12.

[15] Pl.'s Mot. To Compel ("On its face, the Operating Agreement states that 'The Members enter into this Agreement to provide for the governance of the Company and the conduct of its business, and to specific their relative rights and obligations.'" (Internal citation omitted) "Likewise, the LLC Act defines an operating agreement as 'the agreement under section 1104 of this chapter concerning the relations among the members, managers, and limited liability company The term includes amendments to the agreement.'").

[16] Pl.'s Reply To Att'y Alger's Response to Mot. To Compel.

[17] V.I. R. Civ. P. 26(b).

[18] V.I.R.E. 401; *see also Donastorg v. Walker*, 2019 VI Super 96U, ¶ 12.

[19] V.I. R. Civ. P 34(a).

[20] V.I. R. Civ. P 34(b).

responding to a subpoena and provides that "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."[21] This same rule is also made applicable to *parties* withholding information "otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material" under V.I. R. Civ. P. 26(b)(5)(A).

¶15   If a party served fails to make all necessary disclosures, the party requesting disclosure may move to compel discovery under Rule 37. "For purposes of this subpart (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[22] But the motion must satisfy certain requirements. "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[23] This certification shows in writing that, prior to filing, counsel for the parties and any self-represented parties attempted to meet and confer in a good faith effort to eliminate the necessity for the motion or to eliminate as many of the disputes as possible.

¶16   Similarly, Rule 37-1(a) states:

> Prior to filing any motion relating to discovery pursuant to Rules 26 through 37, other than a motion relating to depositions under Rule 30, counsel for the parties and any self-represented parties shall confer in a good faith effort to eliminate the necessity for the motion — or to eliminate as many of the disputes as possible.[24]

¶17   As this Court has stated:

> Good faith mandates a genuine attempt to resolve the discovery dispute through non-judicial means. Conferment requires that the moving party must personally engage in two-way communication with the non-responding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention. Importantly, these mandates include honesty in one's purpose to meaningfully discuss the discovery dispute ... and faithfulness to one's obligation to secure information without court action.[25]

¶18   In addition to the certification requirement, Rule 37-1(b) requires the moving party to submit a letter to opposing counsel "identifying each issue and/or discovery request in dispute, stating briefly the moving party's position with respect to each (and providing any legal authority), and specifying the terms of the discovery order to be sought."[26] "After service of the letter request,

---

[21] V.I. R. Civ. P. 45(e)(2)(A).
[22] V.I. R. Civ. P 37(a)(4).
[23] V.I. R. Civ. P. 37(a)(1).
[24] V.I. R. Civ. P. 37-1(a).
[25] *Walker*, ¶ 15.
[26] V.I. R. Civ. P. 37-1(b).

it shall be the responsibility of counsel for the requesting party to make any necessary arrangements for a conference."[27] Rule 37-1 encourages counsel "to meet in person at a mutually convenient location," and if meeting in person is not practical, "the conference may take place telephonically or by video conferencing."[28] "Mail or e-mail exchanges are not sufficient."[29] Finally, the conference must occur "within 15 days after the moving party serves a letter requesting such conference."[30]

¶19    The Virgin Islands Code establishes and defines the attorney-client privilege and work-product immunity in 5 V.I.C. § 852, including who may claim the privilege in 5 V.I.C. § 852(c):

> Who May Claim the Privilege. The privilege under this subsection may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client or the successor, trustee or similar representative of a corporation, association or other organization, whether or not in existence. A person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client. A lawyer is obligated to assert the privilege to protect a client who cannot assert it for a valid reason such as incapacity or death. The privilege continues even after the death of either the client or attorney.[31]

¶20    Section 852(d) lays out exceptions including the pre-existing documents exception in § 852(d)(8), which states: "Physical Evidence; Fee Arrangements, Pre-existing Documents. The privilege does not apply to physical evidence that the client provides to the lawyer; attorney fee arrangements, agreements and payments; and documents pre-existing the attorney-client relationship."[32] "In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[33] Further, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[34]

¶21    Work-product immunity is governed by 5 V.I.C. § 852(e), which states:

> (1) Qualified Immunity. Work product immunity may protect an attorney from disclosing to a third party some of the information the attorney creates or acquires while preparing for litigation. Work product materials may be subject to discovery if the party requesting them proves (i) a substantial need for materials, and (ii) an inability to obtain a substantial equivalent of those

---

[27] V.I. R. Civ. P. 37-1(c)(1).
[28] V.I. R. Civ. P. 37-1(c)(2).
[29] *Id.*
[30] V.I. R. Civ. P. 37-1(c)(3).
[31] 5 V.I.C. § 852(c).
[32] 5 V.I.C. § 852(d)(8).
[33] *Joseph v. Pricesmart LLC*, No. ST-2015-CV-62, 2016 WL 852095, at *5. (V.I. Super. Ct. Feb. 29, 2016).
[34] *Samuel v. Century Hill*, 2021 VI Super 40U, ¶ 13 (quoting *Fenster v. Dechabert*, No. SX-16-CV-343, 2017 WL 4969896, at *11).

materials by another method.

(2) Absolute Immunity. An attorney possesses absolute immunity from disclosing work products when they divulge the attorney's "mental impressions, conclusions, opinions, or legal theories" regarding litigation.[35]

¶22    The Virgin Islands Uniform Limited Liability Company Act establishes that "A limited liability company shall provide members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement."[36] Distinguishing between current and former members, the statute provides "The company shall provide former members and their agents and attorneys access for proper purposes to records pertaining to the period during which they were members."[37] While the statute provides that members have broad inspection rights, it also permits the LLC to deny access in limited circumstances, noting a company may withhold information if "the demand or information demanded is unreasonable or otherwise improper under the circumstances."[38]

### IV. ANALYSIS.

### A. The Good Faith Conferral Requirement Has Been Met.

¶23    Here, the Arvidsons have included a statement within their Motion to Compel stating "Plaintiffs' Counsel conferred in good faith with Attorney Alger in writing on various dates as referenced herein and by telephone on October 29, 2019 regarding the discovery sought, consisting of documents and communications up to the filing of the Complaint, in an effort to obtain that discovery without court action."[39] The Arvidsons' Motion also states that on three occasions between June 2019 and August 2019, their counsel wrote to Alger to request the subpoenaed documents along with dates Alger would be available to be deposed.[40] The Arvidsons further state that in an August 18, 2019 email, Alger said he would produce the subpoenaed documents and on August 19, 2019, Alger did, in fact, produce some of the requested documents along with a privilege log containing more than 100 documents.[41]

¶24    The Arvidsons' Motion alleges that on September 16, 2019, and September 25, 2019, they again reached out to Alger, and thereafter counsel for both parties conferred and agreed regarding the time span of the Arvidsons' request.[42] The Arvidsons further state that on October 16, 2019, their counsel "wrote to Attorney Alger that it was only seeking documents and communications to the date of the filing of the Complaint," which was filed on July 12, 2016.[43] The Arvidsons list

---

[35] 5 V.I.C. § 852(e).
[36] 13 V.I.C. § 1408.
[37] *Id.*
[38] *Id.*
[39] Pl.'s Mot. To Compel.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

October 24, 2019 and October 28, 2019, as dates that their counsel either reached out or received correspondence from Alger regarding the subpoenaed documents.[44]

¶25    While the Arvidsons did not attach exhibits displaying the letters and emails which they refer to in their Motion, Alger confirmed in his Response that he submitted a privilege log outlining discovery that he believes cannot be produced in accordance with his ethical obligations to former client, Buchar.[45] Furthermore, Alger's Response does not deny the Arvidsons' statements regarding the parties conferring numerous times as to the requested documents, indicating to the Court that the good faith negotiation certification and conferral requirement has in fact been met.

### B. The Arvidsons' Inspection Rights and Dissociation from VI Chiropractic.

¶26    The Virgin Islands Uniform Limited Liability Company Act establishes that LLCs must provide current and former members with access to company records related to the period of their membership.[46] Thus, key to determining what documents the Arvidsons are entitled to as former members of VI Chiropractic is identifying when the Arvidsons dissociated from the company. Because the parties' Operating Agreement is silent on withdrawal and dissociation procedures, this Court looks to the LLC Act, providing that "A member is dissociated from a limited liability company upon occurrence of any of the following events,"[47] including receiving notice of a member's express will to withdraw.

¶27    Alger offers contradictory arguments regarding Arvidsons' departure from VI Chiropractic and rights as former members of the company. While acknowledging the Arvidsons are entitled to subpoenaed documents produced during their time as members of the LLC,[48] Alger, nonetheless, goes on to claim he only provided documents responsive to the Arvidsons' Subpoena produced before he began representing Buchar, submitting a privilege log under V.I. R. CIV. P. 45(e)(2) for all materials he believes could not be disclosed after this representation began.

¶28    While neither party cites to an exact date, it appears the Arvidsons stopped working with at VI Chiropractic between late May 2016 and early June 2016 after Buchar served them with the Notice of Dissolution.[49] Though the Arvidsons' Complaint was filed July 12, 2016, their official dissociation with VI Chiropractic did not occur until over a year later on July 20, 2017, when they wrote to Buchar with formal notice.[50] The Arvidsons were thus members of VI Chiropractic preceding this suit and are entitled to subpoenaed documents up to their requested date of July 12, 2016. Alger's argument that the parties' Operating Agreement gives Buchar exclusive rights to company litigation documents and discretion as to what documents he will "release" fails under § 1104's language providing that operating agreements cannot "unreasonably restrict a right to

---

[44] *Id.*

[45] Alger's Response To Mot. To Compel. at 3.

[46] 13 V.I.C. § 1408.

[47] 13 V.I.C. § 1601.

[48] Alger's Response To Mot. To Compel. at 4 ("Plaintiffs were certainly entitled to the former as members of VI Chiropractic, and they received said documents.").

[49] Pls.' First Amend. Ver. Compl. 15-19.

[50] Pls.' First Amend. Ver. Compl. Ex. C.

information or access to records under section 1408."[51]

¶29　Because the Arvidsons did not formally dissociate from VI Chiropractic until well after filing of their Complaint, their request to compel documents concerning Alger's representation of and payment from VI Chiropractic will be granted with respect to relevant documents created on or before July 12, 2016.

### C. Privileges.

#### 1. Buchar Cannot Assert Personal Attorney-Client Privilege as to Documents Unrelated to His Individual Representation.

¶30　Alger states that he currently withholds "material in his possession that would otherwise be responsive to the requests but are protected by the attorney client privilege."[52] While unclear from his Response, it appears Alger attempts to assert the attorney-client privilege on Buchar's behalf rather than VI Chiropractic.[53] The Arvidsons' rebuttal claims that "[t]he attorney client privilege has no application to any communications between Attorney Alger and VI Chiropractic because the Arvidsons, along with Dr Buchar, *were* VI Chiropractic."[54] Both parties misstate the application of privileges for LLCs in the Virgin Islands.

¶31　Contrary to the Arvidsons' assertions, Virgin Islands law creates a clear legal separation between an LLC as an entity and its members, consistently recognizing that "[a] limited liability company is a legal entity distinct from its members."[55] Relating to Alger's claims of privilege on Buchar's behalf, Virgin Islands law also establishes that the attorney-client privilege "is personal, belongs solely to the client, and generally cannot be asserted by anyone other than the client."[56] Here, this means that VI Chiropractic was a distinct client of Alger's before and after Alger began representing Buchar personally. Likewise, the attorney-client privilege belongs to and can be asserted by VI Chiropractic as a business entity rather than by any of its current or former members, personally.

¶32　Additionally, § 1409 establishes fiduciary duties such as "the duty of loyalty, duty of care, and obligation of good faith and fair dealing apply in LLC contexts."[57] Thus, even where a LLC's operating agreement identifies a single manager, vesting that manager with exclusive authority to assert or waive the attorney-client privilege on the LLC's behalf, similar to how Buchar was vested with exclusive authority to hire company representation, this authority exists in the manager's fiduciary capacity as manager of the LLC, and not in personal right. Buchar therefore cannot assert

---

[51] 13 V.I.C. § 1104.

[52] Alger's Response To Mot. To Compel. at 7.

[53] *Id.* ("The undersigned previously produced all documents related to VI Chiropractic and a conforming affidavit of completeness . . . . As to the documents in the undersigned's possession that pertain to his representation of defendant Dr. Buchar, the undersigned cannot produce said materials without violating his ethical obligations.").

[54] Pl.'s Mot. To Compel.

[55] 13 V.I.C. § 1201; *Ferraro v. Gayanich*, No. 2016-0022, 2017 WL 3083655, at *12 (D.V.I. July 19, 2017).

[56] *Browne v. Virgin Islands*, 2012 VI 56.

[57] 13 V.I.C. § 1409; *Arvidson v. Buchar*, 2020 VI Super 48.

personal attorney-client privilege as to documents unrelated to his individual representation.

## 2. Buchar Cannot Assert Personal Privilege for VI Chiropractic.

¶33    Alger argues the Arvidsons' Subpoena sought post-suit documents involving Alger's representation of VI Chiropractic and Buchar.[58] Thus, Alger withheld any documents produced on or after he was retained as counsel for Buchar in a personal capacity. Though he does not specify when exactly he was retained, Alger identifies May 2016 as the general timeframe.[59]

¶34    As explained above, though the Arvidsons' request need not be limited to pre-suit documents because of their official dissociation from the LLC much later, the Arvidsons have made clear that they move "to compel production of all subpoenaed documents, but only with respect to those documents dated prior to the date on which this action was commenced, July 12, 2016."[60] With concern to documents labeled "settlement discussions" or related to Alger's previous representation of Buchar, the Arvidsons note that their Subpoena and Motion to Compel "are not aimed at such communications."[61]

¶35    Notably, Alger's argument also suggests that his addition of Dr. Buchar as a personal client somehow retroactively diminished statutory rights the Arvidsons held, essentially arguing the Arvidsons' inspection rights as members of the LLC ended when his representation of Dr. Buchar began. If this were true, then majority members of a company could be motivated to retain formerly hired counsel to shield themselves from certain discovery requests. Illustrative of this concern, in *In Re Newman*, a Connecticut bankruptcy court held that a managing member could not use the LLCs attorney-client privilege to withhold documents from other members during litigation involving the managing member's alleged misconduct in operating the LLC.[62] The Court there reasoned that allowing a manager accused of fraud to use the LLC's privilege to shield himself from member allegations would be unjust.[63]

¶36    Like *In Re Newman*, here Alger represented VI Chiropractic well before adding Buchar as a client in his individual capacity. Furthermore, "The documents at issue in this case are sought for use in litigation between members and the managing member based on the managing member's conduct in operation of the LLC[]."[64]

¶37    While § 1408  does permit an LLC or its representatives to deny access to company documents in limited circumstances, this exception only applies where "the demand or information demanded is unreasonable or otherwise improper under the circumstances."[65] This narrow exception requires an LLC and those with management rights to make a determination that a

---

[58] Alger's Response To Mot. To Compel. at 16.

[59] *Id*. at 3.

[60] Pl.'s Reply To Att'y Alger's Response To Mot. To Compel.

[61] *Id*.

[62] *In re Newman*, 500 B.R. at 331 (Bankr. D. Conn. 2013).

[63] *Id*.

[64] *Id*.

[65] 13 V.I.C. § 1408.

member's request to records is not unreasonable or improper.[66] Because Alger has articulated interest in protecting VI Chiropractic's documents for reasons independent of attorney-client privilege, this exception does not apply. As such, any documents created or transmitted on behalf of VI Chiropractic before Alger's representation of Buchar began are simply not privileged in relation to Buchar and Alger cannot assert Buchar's personal privilege on behalf of VI Chiropractic as an entity.

### 3. Work-Product Immunity

¶38     The Court is not satisfied from its review of the Privilege Log that some of the documents Alger withheld were prepared in anticipation of litigation. The withheld documents appear to be general company documents prepared in connection with the LLC's operation such as a draft operating agreement, invoices, company forms and employment information, and general email communications. The Court therefore concludes that these are not work-product documents.

¶39     Moreover, as the Court established above, Buchar's personal client privilege is separate and distinct from the LLC's. Setting aside this fact, Alger's response does not address the Arvidsons' more specific request that predate Alger's personal representation of Buchar and imposed discovery cut-off. For example, while not dated, the entry titled "Draft Operating Agreement w[ith] Comments," is placed before all other entries beginning in May 2015, suggesting Attorney Alger created the draft agreement sometime before that date and before the filing of the Arvidsons' Complaint.[67] Accordingly, the Court will order Alger to produce any work-product documents created or transmitted on behalf of VI Chiropractic on or before the filing of the Arvidsons' Complaint. This does not include any work-product documents created on account of Alger's representation of Buchar.

### D. Documents Alger Must Produce.

¶40     Alger's Privilege Log appears to combine records related to his representation of the LLC and related to his representation of Buchar. Because Alger and Buchar's respective motions to quash have been previously addressed, the Court will not conduct an individual analysis of each entry listed on Alger's Privilege Log. Instead, the Court will use the categories listed on the log, identified as pertinent considerations by the parties, to determine what documents Alger must produce. The court will issue order consistent with this opinion identifying which of the 104 documents listed in the Privilege Log must be produced.

¶41     In addition to documents the Court identifies, Alger will be directed to produce any additional documents responsive to the Arvidsons' Subpoena, created on or before July 12, 2016, and related to Alger's representation of VI Chiropractic. Alger will also be directed to submit to this Court for an in camera review any documents he believes may concern joint legal and business advice for VI Chiropractic and Buchar. The Court will not require Alger to produce documents

---

[66] *Morehouse v. SBRMCOA, LLC*, No. 493/2006, 2007 WL 9833364, at *2 ("SBRMCOA must make a determination that Morehouse's request is not unreasonable or improper under the circumstance.").

[67] Pl.'s Reply To Att'y Alger's Response To Mot. to Compel. Ex. A.

exclusively related to his representation of Buchar.

## V. CONCLUSION.

¶42    The Court has reviewed the parties' submissions along with Alger's Privilege Log and has found some documents to be protected by the attorney-client privilege and work-product immunity, but others not to be. The Court will not compel Alger to produce documents related to his representation of Buchar in a personal capacity. Rather, consistent with the Court's March 20, 2019 Order, the Court will compel Alger to produce documents created on or before July 12, 2016, related to his representation of VI Chiropractic. Accordingly, it is

ORDERED that Plaintiffs' Motion To Compel, filed October 29, 2019, is **GRANTED to the extent that, on or before April 20, 2026,** Attorney Rosh D. Alger **SHALL**, in response to the Plaintiffs' January 11, 2019 subpoena duces tecum produce, all documents created on or before July 12, 2016, relating to his representation of VI Chiropractic; and it is further

ORDERED that Plaintiffs' Motion To Compel, filed October 29, 2019, is **GRANTED to the extent that, on or before April 20, 2026,** Attorney Rosh D. Alger **SHALL,** in response to the Plaintiffs' January 11, 2019 subpoena duces tecum, file, submit to this Court, for *in camera* inspection, all documents he believes may concern joint legal and business advice he provided to both VI Chiropractic and Dr. William L Buchar; and it is further

ORDERED that a copy of this Memorandum Opinion and Order shall be directed to Attorney Rosh D. Alger and counsel of record.[68]

DATED: 3/17/26

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

ATTEST:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
*for* **DONNA D. DONOVAN**
Court Clerk Supervisor: 3/18/2026

---

[68] Plaintiffs/Third-Party Defendants Dr. Tylur Arvidson and Dr. Tygue Arvidson are represented by Attorneys Christopher Allen Kroblin and Marjorie Whalen (Kellerhals Ferguson Kroblin PLLC). Defendant Dr. William L. Buchar is represented by Attorney Lisa M. Komives (Dudley Newman Feuerzeig, LLP) and *Pro Hac Vice* attorneys, John C. Kreamer (Kreamer Law Group, LLC) and Louis N. Karnezis (Karnezis Law Group, LLC). Attorney Leigh Goldman, a non-party deponent, is represented by Attorney A. J. Weiss (A.J. Weiss & Associates). Attorney Rosh D. Alger, a non-party deponent, is representing himself.